**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| OLIVIA VAN HOUSEN, STEFAN REBIC, and NATE DLUZEK, individually and on behalf of all others similarly situated, | Case No. 1:23-cv-15634 |
| | Judge: Honorable LaShonda A. Hunt |
| Plaintiffs, | Magistrate: Honorable Gabriel A. Fuentes |
| vs. | |
| AMAZON.COM, INC. D/B/A JUST WALK OUT and AMAZON WEB SERVICES, INC., | |
| Defendants. | |

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**</u>

6545082

## TABLE OF CONTENTS

Page

I.    INTRODUCTION AND BACKGROUND ...................................................................1

II.   LEGAL STANDARD...........................................................................................4

III.  ARGUMENT ....................................................................................................4

    A.    Plaintiffs' Claims Are Not Plausible Because They Do Not Allege that the JWO Technology Collects "Biometric Identifiers," as Defined by BIPA..................................................................................4

        1.    It is Not Plausible that Amazon's Patents Detail What Information the JWO Technology Captures ...............................6

        2.    It is Not Plausible that the Existence of Cameras in Amazon Go Stores Shows that the JWO Technology Captures Biometric Identifiers .............................................................9

    B.    Plaintiffs Fail to Plausibly Allege Disclosure of Biometric Identifiers under Section 15(d) of BIPA in Count 4 ...........................13

IV.   CONCLUSION................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alam v. Miller Brewing Co.*,
  709 F.3d 662 (7th Cir. 2013) ..................................................................... 4, 12

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
  6 F.3d 1523 (Fed. Cir. 1993).......................................................................... 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................... 2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007)....................................................................................... 4

*Bernal v. ADP, LLC*,
  2019 WL 5028609 (Ill. Cir. Ct. Aug. 23, 2019) ........................................ 3, 4

*BookXchange FL, LLC v. Book Runners, LLC*,
  2019 WL 1863656 (N.D. Ill. Apr. 25, 2019) ................................................. 8

*Bresaz v. Cnty. of Santa Clara*,
  2015 WL 1230316 (N.D. Cal. Mar. 17, 2015)................................................ 6

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) ............................................................... 2, 4, 10

*Brownmark Films, LLC v. Comedy Partners*,
  682 F.3d 687 (7th Cir. 2012) ........................................................................ 11

*Carpenter v. McDonald's Corp.*,
  580 F. Supp. 3d 512 (N.D. Ill. 2022) ........................................................... 14

*Daichendt v. CVS Pharmacy, Inc.*,
  2022 WL 17404488 (N.D. Ill. Dec. 2, 2022)......................................... 5, 9, 12

*Holland v. Lake Cnty. Mun. Gov't*,
  605 F. App'x 579 (7th Cir. 2015) ................................................................... 9

*In re Witaschek*,
  2018 WL 1386695 (Bankr. D.D.C. Mar. 16, 2018)........................................ 6

*Jacobs v. Hanwha Techwin Am., Inc.*,
  2021 WL 3172967 (N.D. Ill. July 27, 2021)............................................. 8, 10

*Jones v. Microsoft Corp.*,
  649 F. Supp. 3d 679 (N.D. Ill. 2023) ........................................................... 12

TABLE OF AUTHORITIES (cont.)

Page(s)

*King v. Cook Cnty. Dep't of Corr.*,
    2018 WL 10758707 (N.D. Ill. Mar. 8, 2018) .................................................................. 11

*Kloss v. Acuant, Inc.*,
    462 F. Supp. 3d 873 (N.D. Ill. 2020) ............................................................................... 3

*Martin v. Living Essentials, LLC*,
    160 F. Supp. 3d 1042 (N.D. Ill.) ...................................................................................... 9

*Namuwonge v. Kronos, Inc.*,
    418 F. Supp. 3d 279 (N.D. Ill. 2019) .................................................................. 4, 12, 13, 14

*Robinson v. Mammoth Life & Acc. Ins. Co.*,
    454 F.2d 698 (7th Cir. 1971) .......................................................................................... 11

**Statutes**

740 ILCS 14/5(c) .................................................................................................................. 5

740 ILCS 14/5(a)-(b) ............................................................................................................. 1

740 ILCS 14/5(a) .................................................................................................................. 5

740 ILCS 14/5 ...................................................................................................................... 5

740 ILCS 14/15(d) ................................................................................................................ 3

740 ILCS 14/10 ............................................................................................................. passim

6545082

I.       **INTRODUCTION AND BACKGROUND**

This case concerns a straightforward application of the well-established limits of the Illinois Biometric Information Privacy Act ("BIPA").  In 2008, the Illinois General Assembly enacted BIPA to address "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(a)-(b).  But the Assembly expressly limited the types of technology that BIPA applied to by defining the term "biometric identifier" with a great deal of specificity, restricting it to just six particular types of biometric data that are covered by the term.  740 ILCS 14/10.  Accordingly, unless technology involves "retina or iris scan[s], fingerprint[s], voiceprint[s], [or] scan[s] of hand or face geometry," BIPA does not apply.  *Id.*

Amazon[1] launched its "Amazon Go" stores in Chicago more than five years ago.  (Compl. ¶¶ 47 & p. 7 n.1.)  The stores employ Amazon's "Just Walk Out" technology ("JWO Technology"), which allows customers to purchase groceries and everyday items without waiting in a long line to check out of the store.  (Compl. ¶ 18 n.15 (citing Ex.[2] 2 (Video Transcript) (explaining the JWO Technology).)  Customers can simply walk out of the store with the items they select, and Amazon charges the credit card they used to enter the store (or the credit card associated with their Amazon account)[3]  (*Id.*)

---

[1] Because Plaintiffs refer to Defendants Amazon.com, Inc. and Amazon Web Services, Inc. together as just "Amazon," this Motion does the same.

[2] "Ex." refers to the exhibits attached to the Declaration of Sourabh Mishra, filed herewith.

[3] Consumers can also enter an Amazon Go store by voluntarily choosing to register their palmprint and link it to a credit card.  (Compl. ¶ 18 n.15 (Ex. 2) (explaining the palmprint entry option named "Amazon One").)  Plaintiffs do not allege any BIPA violations by Amazon in offering this palmprint technology, which includes a robust BIPA-compliant consent form and the requisite disclosures.

- 1 -

Significantly, and as Amazon has already informed Plaintiffs' counsel in this case, the JWO Technology does not rely on retina or iris scans, fingerprints, voiceprints, or scans of hand or face geometry to track customer selections. This is confirmed by the fact that the JWO Technology works as intended even if a customer enters, walks around, and leaves the store in full head-to-toe covering without speaking. (Ex.[4] 3 (JWO Technology worked even where person entered the store while dressed in attire that covered his body from *head to toe*, including a face covering, gloves, and sunglasses, and did not speak).) The JWO Technology simply does not require, use, or capture *any* biometric identifiers, as defined by BIPA.

Nevertheless, Plaintiffs now bring four claims under BIPA, each premised on the conclusory allegation that the JWO Technology captures biometric identifiers. (*Id.* ¶¶ 58-81.) Plaintiffs, however, do not allege *any* specific facts that make this allegation plausible. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (holding that the Supreme Court in *Iqbal* required "some specific facts to ground [] legal claims" (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Instead, Plaintiffs resort to "merely parrot[ing]" the statutory language, *Brooks*, 578 F.3d at 581, and copy-and-pasting from one of multiple Amazon patents that Plaintiffs say, "*appear* to relate to JWO technology." (Compl. ¶ 25 n.18 (emphasis added).)

But the mere existence of these patents—absent any facts establishing *they are actually being practiced* in stores equipped with JWO Technology—is insufficient to create a plausible inference that Amazon is collecting biometric identifiers. For starters, any inference that the JWO Technology relies on biometric identifiers is undermined by the fact that the technology works even when shoppers' faces and hands are covered, as demonstrated during years of COVID

---

[4] Amazon is not requesting that the Court take judicial notice of Ex. 3 but is instead only providing it as background.

lockdowns (and as Plaintiffs could readily confirm today). The patents also describe many inventions that are obviously not being deployed in stores equipped with JWO Technology, such as "light curtain[s]" and "robot[s]" that may be "configured to manage and/or handle inventory," thus demonstrating that the contents of the patents do not necessarily reflect the technology that Amazon is deploying. (Ex. 4 ("396 Patent") at 0064, 0087.) Plaintiffs also do not allege that the JWO Technology is marked by any of these patents, instead *admitting* that "Amazon does not specifically confirm which patents underlie the technology employed in Amazon Go" (*id.* ¶ 25 n.18).

Nor does Plaintiffs' allegation that Amazon deploys a "network of cameras" create a plausible inference that it collects biometric identifiers. Many retail stores in Illinois employ cameras to monitor customers, and BIPA does not prohibit doing so, whether for purposes of security or tracking customer selections. Absent any *specific facts* plausibly showing that Amazon uses those cameras to scan customers' hand or face geometry, Plaintiffs' BIPA claims must be dismissed. *See, e.g.*, *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 877 (N.D. Ill. 2020) (dismissing BIPA claims where plaintiff "fails to support her allegations with enough facts"); *Bernal v. ADP, LLC*, 2019 WL 5028609 (Ill. Cir. Ct. Aug. 23, 2019) (same).

Even if Plaintiffs adequately pleaded that the JWO Technology captures "biometric identifiers," as defined by BIPA, they fail to plead sufficient facts to maintain Claim 4, an alleged violation of Section 15(d) of BIPA. Section 15(d) bars private entities from "disclos[ing]" biometric information to third parties without first obtaining consent. 740 ILCS 14/15(d). Here, Plaintiffs include a single conclusory allegation that Amazon shares the information with "third-party servers." (Compl. ¶¶ 6, 22.) But they offer *no facts* in support that would make Claim 4 plausible. In fact, Plaintiffs *admit* that Amazon has its *own* "servers and computing infrastructure"

- 3 -

(*id.* ¶ 19)—the largest cloud service provider globally—which makes Plaintiffs' allegation that Amazon would have to rely on third party servers *less* plausible. Courts routinely dismiss Section 15(d) claims in similar circumstances. *See, e.g.*, *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285 (N.D. Ill. 2019) (dismissing Section 15(d) claim when plaintiff "pleaded on information and belief that [the defendant] . . . disclosed her fingerprints to other third parties that host the data"); *Bernal*, 2019 WL 5028609 at *3 ("Suggesting that the technology Defendant created allows for the dissemination of biometric information is not an allegation of the Defendant's disseminating biometric information.").

## II.    LEGAL STANDARD

To overcome a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face," supported by factual allegations beyond the "speculative," "conceivable," and "possible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555-57, 570 (2007). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks*, 578 F.3d at 581).

## III.    ARGUMENT

### A.    Plaintiffs' Claims Are Not Plausible Because They Do Not Allege that the JWO Technology Collects "Biometric Identifiers," as Defined by BIPA

The Illinois legislature has expressly identified six "biometric identifiers" that are subject to BIPA: "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry."  740 ILCS 14/10.  Because Plaintiffs fail to allege sufficient facts to make plausible their claim that the

- 4 -

JWO Technology captures any of these biometric identifiers, BIPA does not apply, and Plaintiffs' claims must be dismissed.

In 2008, the Illinois General Assembly enacted BIPA to address concerns about the immutability of biometric identifiers and the associated heightened risk of identity theft. 740 ILCS 14/5. The General Assembly observed that "unlike other unique identifiers that are used to access finances or other sensitive information," biometrics cannot be changed if compromised, leaving the individual with no recourse. 740 ILCS 14/5(c). The Illinois legislature, however, noted the promise of new technological advances, 740 ILCS 14/5(a), and thus expressly limited the reach of BIPA through its definition of "biometric identifiers." 740 ILCS 14/10.

Not only does BIPA limit "biometric identifiers" to a specific set of immutable biological characteristics, but it also "expressly excludes certain types of information from the definition of 'biometric information,' including confidential and sensitive non-biometric information *that can be used to identify an individual*." *Daichendt v. CVS Pharmacy, Inc.*, 2022 WL 17404488, at *2 (N.D. Ill. Dec. 2, 2022) (emphasis added), *modified on reconsideration,* 2023 WL 3579082 (N.D. Ill. Feb. 3, 2023). These exclusions include, for example: "physical descriptions such as height, weight, hair color, or eye color." 740 ILCS 14/10. Thus, the Illinois legislature clearly intended BIPA to cover only specific, listed attributes. *See id.* ("Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.").

Plaintiffs make a conclusory allegation that the JWO Technology captures scans of "facial geometry, hand geometry, and voice print." (Compl. ¶¶ 15, 24.) In support, they rely on just two categories of alleged facts: (1) Amazon's "patents," while describing and quoting only the '396

Patent; and (2) the use of a "network of cameras" in the Amazon Go store. Neither makes plausible Plaintiffs' claim that the JWO Technology collects "biometric identifiers."

1.     <u>It is Not Plausible that Amazon's Patents Detail What Information the JWO Technology Captures</u>

Plaintiffs allege that the JWO Technology functions in the manner described in Amazon's "various patent filings," although Plaintiffs rely almost exclusively on the '396 Patent. (Compl. ¶ 25 n.18 (listing five Amazon patents and stating that "they are not further discussed, as [the '396 Patent] encompasses the fundamental processes in each proceeding patent"); *id.* ¶¶ 25-37, 44; *see also* Ex. 4).) It is not plausible, however, that those patents reflect the inner workings of the JWO Technology for five reasons.

*First*, Plaintiffs concede that there is nothing to tie the patents identified in the Complaint to the JWO Technology being deployed by Amazon today. Although tucked away in a footnote, Plaintiffs admit that the patents they identify only "*appear* to *relate* to JWO [T]echnology." (Compl. ¶ 25 n.18 (emphasis added).) This is a critical admission because it confirms that Plaintiffs have no basis to allege, and do not in fact allege, that Amazon is *actually practicing* these patents in its JWO Technology. Plaintiffs merely speculate that Amazon *might* be. That is insufficient to state a claim under *Twombly*. *See Bresaz v. Cnty. of Santa Clara*, 2015 WL 1230316, at *6 (N.D. Cal. Mar. 17, 2015) ("[A]llegation that the Decedent *appeared to be* 'manic' is similarly insufficient" absent allegations "that the Decedent *was* manic" to allege disability under ADA (emphasis added)); *In re Witaschek*, 2018 WL 1386695, at *1 (Bankr. D.D.C. Mar. 16, 2018) ("[A]lleging that the District '*appears* to have assessed' taxes for prepetition years is insufficient to allege that the taxes were *actually* assessed" (emphasis added)).

6545082

*Second*, it is black letter patent law that technology that practices a patent must be marked with the patent number. *See, e.g., Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993) (under patent laws, patent-holders are required to mark patented apparatus to give notice to the public of the patent). Plaintiffs do not allege, however, that any of the JWO Technology bears such a marking, including, for example, the overhead and shelf cameras that Plaintiffs allegedly saw. (Compl. ¶ 24.) Instead, Plaintiffs effectively admit that they did not identify any such marking, alleging that "Amazon *does not* specifically confirm which patents underlie the technology employed in Amazon Go and Fresh." (*Id.* ¶ 25 n.18 (emphasis added).) It is thus implausible for Plaintiffs to simply assume that the technologies described in the patents are being practiced in the JWO Technology.

*Third*, even a cursory review of the patents shows that they do not support Plaintiffs' allegation that the JWO Technology captures biometric identifiers, let alone push that allegation over the line from speculation to plausibility. For example, the '396 Patent quoted throughout the Complaint is titled "Transitioning Items From a Materials Handling Facility." (Ex. 4 at 1.) The *first* example of an application is for an "e-commerce website [that] may maintain inventory in a fulfillment center"—as Amazon famously does. (*Id.* at 0002.) A retail store is merely one of many other *potential* applications for the technology, including "libraries, museums, rental centers, and the like." (*Id.* at 0003.)

Moreover, the patents contain many elements that are obviously *not* part of the stores, further undermining any inference that the JWO Technology incorporates the patented technologies. For example, the '396 Patent discloses that "a robot [may be] configured to manage and/or handle inventory." (Ex. 4 at 0087.) Just as there are currently no robots that manage inventory at stores equipped with the JWO Technology, there is no basis to allege that JWO

- 7 -

Technology embodies other claims from that Patent, such as the potential to collect facial geometry, hand geometry, or voice prints. Put simply, a "guess" that some portions of the patents *may* apply to JWO stores is insufficient to state a plausible claim. *See, e.g.*, *BookXchange FL, LLC v. Book Runners, LLC*, 2019 WL 1863656, at *7 (N.D. Ill. Apr. 25, 2019) ("Equivocal inferences make for implausible claims.").

*Fourth*, even if it were plausible that the patents relate to the JWO Technology in some way, the claims Plaintiffs cite are only examples of *possible* and *permissive* uses of the patented technology. For example, the '396 Patent explains that "facial recognition" is merely an *example* of one technique that "*may* be used to identify a user." (Ex. 4 at 0052 (emphasis added).) The patent likewise explains that "[in] *some* implementations," microphones "*may* record sounds made by the user" to "determine the location of the user"—not to identify the user. (*Id.* at 0053 (emphases added).) To the extent there was any doubt, the patent expressly clarifies that "[a]s used throughout this application, the word 'may' is used in a permissive sense (i.e., meaning having the potential to), rather than the mandatory sense (i.e., meaning must)." (*Id.* at 0014.)

*Fifth,* as discussed further in Section III.A.2 below, Plaintiffs allegation that the patents show that the JWO Technology captures facial geometry and hand geometry is not plausible in light of the fact that the technology still works even if the face and hands are covered. Likewise, the allegation that the patents show that voiceprints are captures is not plausible when Plaintiffs have alleged no mechanisms by which a voiceprint might be captured (e.g., the existence of microphones), nor that they ever spoke while in the store. *See Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021) (dismissing where "plaintiff repeatedly alleges that defendant 'collected' his biometric data without alleging how, when, or any other factual detail"). Accordingly, to the extent that Plaintiffs are alleging that the patents require the

- 8 -

collection of biometric information, plaintiffs have failed to plausibly allege that the patents reflect how the JWO Technology operates in practice.

In sum, Plaintiffs have alleged only the *existence* of some patents owned by Amazon that describe some technologies with the capability to capture or collect biometric information. But Plaintiffs' ability to find patents referencing technological capabilities to capture biometric data does not constitute plausible allegations that the *JWO Technology itself* captures biometric identifiers. Plaintiffs' speculation regarding the patents is thus unavailing. *See Holland v. Lake Cnty. Mun. Gov't*, 605 F. App'x 579, 580 (7th Cir. 2015) (plaintiff's claim "amounts to nothing more than speculation, which is insufficient to state a plausible claim for relief."); *Martin v. Living Essentials, LLC*, 160 F. Supp. 3d 1042, 1051 (N.D. Ill.), *aff'd*, 653 F. App'x 482 (7th Cir. 2016) (the "possibility" that an element of a claim exists, without facts supporting those allegations, is insufficient to survive motion to dismiss).

2.     <u>It is Not Plausible that the Existence of Cameras in Amazon Go Stores Shows that the JWO Technology Captures Biometric Identifiers</u>

Plaintiffs include pictures in the Complaint of what they refer to as a "network of cameras" in the retail stores. (Compl. ¶ 24.) They allege that because the store has these cameras, it must be using them to collect biometric identifiers. (*Id.*) Not so.

Many retail stores in Illinois employ security cameras to monitor customers, vagrants, and others. That is why the Illinois General Assembly specifically carved out broad characteristics that could be captured through the mere use of cameras, like "height, weight, hair color, or eye color." 740 ILCS 14/10. Plaintiffs thus cannot rely on the mere existence of cameras in the Amazon Go store to make their claims plausible; if they could, BIPA claims against virtually every retail store in Illinois would survive the pleading stage. They must do more. *See Daichendt*, 2022

- 9 -

WL 17404488, at *5 (dismissing BIPA claim because "plaintiffs must allege that defendant's collection of their biometric data made defendant capable of determining their identities").

Rather than allege specific facts making plausible that Amazon uses the cameras to capture biometric identifiers, Plaintiffs "merely parrot" the statutory language in BIPA to claim that Amazon collects identifiers such as "facial geometry, hand geometry, and voice print." *See Brooks*, 578 F.3d at 581 ("[P]laintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims . . . have not provided the 'showing' required by Rule 8."). This is insufficient. Courts routinely hold that specific, "factual detail" is needed to make a BIPA claim plausible. *See Jacobs v. Hanwha Techwin Am., Inc.*, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021) (dismissing where "plaintiff repeatedly alleges that defendant 'collected' his biometric data without alleging how, when, or any other factual detail").

In fact, Plaintiffs' own allegations are inconsistent with their assertions that JWO Technology captures face geometry, hand geometry, or voice prints. To be clear, JWO Technology does not capture any biometric identifiers or biometric information subject to BIPA. But even considering Plaintiffs' allegations, the Court should dismiss for failure to plausibly plead that BIPA is implicated:

- <u>Body Geometry</u>: Plaintiffs allege, without factual support or further explanation, that a "network of cameras" captured their "body geometry." (Compl. ¶ 24.) But "body geometry" is not a biometric identifier, and in fact the statute specifically excludes such physical attributes. *See* 740 ILCS 14/10 ("Biometric identifiers do not include . . . physical descriptions such as height, [or] weight.").

- 10 -

6545082

- Face Geometry: Plaintiffs allege that "overhead cameras" capture their face geometry but fail to explain how these cameras do so, or how they account for common realities including face coverings and hats.[5] Indeed, an explanatory video on JWO Technology that Plaintiffs incorporate by reference explicitly states: "No facial recognition is used." (Compl. ¶ 18 n 15 (citing Ex. 2 (video at 1:38)).)[6]

- Hand Geometry: Plaintiffs allege that their hand geometry was captured by "cameras embedded in shelves" and that biometric identifier information was captured "regardless of whether they made a purchase." (Compl. ¶¶ 2, 24.) But a customer's hand geometry cannot be captured by cameras in shelves unless the customer (at a minimum) reached for items on the shelves (a fact Plaintiffs do not allege).[7] And even if Plaintiffs had alleged that they reached onto shelves to grab items, Plaintiffs do not allege how shelf cameras would capture hand geometry. For example, any image a camera could obtain of customers' hands would be obscured by the products, as pictured in the image used in the Complaint.[8]

---

[5] It is common knowledge that customers were required by law to wear facial masks for large portions of the Class Period during the COVID-19 pandemic, which of course precludes the capture of face geometry. *See Robinson v. Mammoth Life & Acc. Ins. Co.*, 454 F.2d 698, 699 (7th Cir. 1971) ("[C]ommon knowledge 'play[s] some part" in passing on a motion to dismiss where facts alleged "are contrary to facts of which the court will take judicial notice."); *King v. Cook Cnty. Dep't of Corr.*, 2018 WL 10758707, at *3 (N.D. Ill. Mar. 8, 2018) (finding plaintiff's complaint that he suffered symptoms on the same day of contact was inconsistent with the incubation period as stated by the Center for Disease Control website).

[6] The Court may consider these articles when ruling on this motion to dismiss. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[T]he incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment.").

[7] For example, the shelf cameras could not have the hand geometry of Plaintiff Stefan Rebic, who alleges he only browsed and did not make a purchase. (*Id.* ¶ 1.)

[8] Plaintiffs' allegations also fail to account for the possible (even probable) scenario that during the winter in Chicago, customers would walk into an Amazon Go store to grab an item while wearing gloves.

- 11 -




(Compl. ¶ 6 (Graphic C).)  Without any explanation of how the shelf cameras can also capture hand geometry, Plaintiffs' allegations that JWO Technology uses hand geometry to identify individuals do not make sense.

- Voice Prints: Plaintiffs do not allege speaking or otherwise vocalizing during their visits, as would be required to capture a voice print.  (*See generally* Compl.)  Nor do they allege seeing any mechanism, such as microphones, by which Amazon could capture voiceprints.  (*Id.*)  Nor could they, as Amazon Go and Amazon Fresh stores do not deploy microphones.

Given these inconsistent and contradictory facts, the Court "need not accept as true" Plaintiffs' "threadbare recitals of the elements of a cause of action." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).  Therefore, the mere use of cameras in Amazon Go stores does not make plausible Plaintiffs' contention that Amazon collects biometric identifiers.  *See Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 685 (N.D. Ill. 2023) ("Without more factual support, this claim must fail").  This Court should thus dismiss all of Plaintiffs' claims with prejudice.  *See, e.g.*, *Daichendt*, 2022 WL 17404488, at *5 (granting motion to dismiss BIPA claims); *Namuwonge*, 418 F. Supp. 3d at 285 (same).

- 12 -

**B.** **Plaintiffs Fail to Plausibly Allege Disclosure of Biometric Identifiers under Section 15(d) of BIPA in Count 4**

Even if Plaintiffs sufficiently alleged that Amazon collects biometric identifiers (and they do not), Count 4 of the Complaint must be dismissed. In Count 4, Plaintiffs allege that Amazon violates Section 15(d) of BIPA by "sharing the Plaintiffs' biometric data." (Compl. ¶ 80.) But Plaintiffs fail to plead sufficient facts to allege a violation of Section 15(d) of BIPA.

Plaintiffs solely rely on conclusory allegations that Amazon "regularly discloses and rediscloses JWO store shoppers' biometric data, from the individual Amazon Fresh or Go stores' cameras, sensors, and servers, to outside AWS servers, Amazon servers, third-party web services, and their employees." (Compl. ¶ 79; *see also id*. ¶ 6 (alleging that the JWO Technology "disseminate[s] biometric data to Amazon and third-party servers"); ¶ 14 (alleging that Amazon "transfer[s] biometric data between individual JWO stores, AWS servers, Amazon, and third parties"); ¶ 43 (alleging Amazon discloses and rediscloses data "to computers and servers external to the store, like servers at AWS and Amazon, or other third-party cloud platforms").)

As an initial matter, Amazon cannot "disclose, redisclose, or otherwise disseminate" information to itself. *Namuwonge*, 418 F. Supp. 3d at 285 (dismissing a Section 15(d) claim for failure to sufficiently allege that defendant "distributed her data to a *third party*" (emphasis added)). Plaintiffs' allegations that Amazon uses its own servers and services to host data thus cannot constitute a violation of Section 15(d).

Yet Plaintiffs fail to allege a single fact supporting their allegations that Amazon disclosed or distributed data to a third party. (*See generally* Compl.) Instead, they rely again on Amazon's patent for the claim that Amazon *could* disclose the information to third parties. (Compl. ¶ 79 ("*As explained in detail in Paragraphs 43-44*, Amazon regularly discloses and rediscloses JWO store

- 13 -

shoppers' biometric data . . . to outside AWS servers, Amazon servers, third-party web services, and their employees." (emphasis added), *id.* ¶ 44 (quoting statements from the '396 Patent).). As explained above in section III.A.1, quotations from Amazon's patents are insufficient to make Plaintiffs' claims plausible. But even if Plaintiffs had sufficiently tied Amazon's patents to the JWO Technology, the claims cited by Plaintiffs only demonstrate that the technology is enabled by a "remote computing resource," not that data is disclosed to third parties. (Compl. ¶ 44.)

Without any *specific* facts showing that Amazon shares Plaintiffs' biometric identifiers with third parties, Count 4 must be dismissed. *See Namuwonge*, 418 F. Supp. 3d at 285 (dismissing Section 15(d) claim when plaintiff "pleaded on information and belief that [the defendant] . . . disclosed her fingerprints to other third parties that host the data"); *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 519 (N.D. Ill. 2022) (dismissing Section 15(d) claim because "all of Plaintiff's allegations regarding disclosure, redisclosure, or dissemination are conclusions that parrot BIPA's language").

## IV.    <u>CONCLUSION</u>

BIPA was drafted to specifically address a narrow set of technology that captured enumerated biometric identifiers. To manufacture a claim against Amazon, Plaintiffs copied the words of the statute to conclusorily allege that the JWO Technology captures Plaintiffs' facial geometry, hand geometry, and voice print. But they fail to identify any specific facts to make their BIPA claims plausible. And their reliance on disconnected patents and cameras does not create a reasonable inference that the JWO Technology implicates BIPA (it does not). For the foregoing reasons, Amazon respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice.

6545082

Dated:  December 4, 2023

Respectfully submitted,

HUESTON HENNIGAN LLP

By: _____
Moez M. Kaba

Moez M. Kaba (*admitted pro hac vice*)
Sourabh Mishra (*admitted pro hac vice*)
**Hueston Hennigan LLP**
620 Newport Center Drive
Newport Beach, CA 92660
Tel: (949) 356-5536
Fax: (888) 775-0898
Email: smishra@hueston.com

Nicola Menaldo
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Telephone: 206.359.8000
Fax: 206.359.9000
Email: NMenaldo@perkinscoie.com

Kathleen A. Stetsko
J. Mylan Traylor
**Perkins Coie LLP**
110 N Upper Wacker Dr Suite 3400,
Chicago, IL 60606
Telephone: 312.324.8400
Fax: 312.324.9400
Email: KStetsko@perkinscoie.com
Email: Mtraylor@perkinscoie.com

*Attorneys for Defendants*

6545082