UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLIVIA VAN HOUSEN, et al., individually and for others similarly situated, ) ) ) ) Plaintiffs, ) ) v. ) ) AMAZON.COM, INC., d/b/a/ JUST WALK OUT, and AMAZON WEB SERVICES, INC. ) ) ) ) Defendants. ) | No. 23 C 15634 District Judge LaShonda A. Hunt Magistrate Judge Gabriel A. Fuentes |

## MEMORANDUM OPINION AND ORDER

This action is before the magistrate judge under discovery referral and consolidated for discovery purposes with *Coulter v. Hudson Group (HG) Retail LLC d/b/a Hudson Nonstop, et al.*, No. 23 C 16176, and *Rivera v. Levy Premium Food Service LP d/b/a Levy Restaurants, et al.*, No. 23 C 8242 (D.E. 31, 51, 52, 67). The suit arises from allegations including that Defendant Amazon.Com's "Just Walk Out" Technology ("JWO Technology") was used to collect, use, store, and disseminate the biometric data of Plaintiffs and putative class members in a manner that violates the Illinois Biometric Information Privacy Act ("BIPA"), and before the Court is Plaintiffs' Motion to Compel ("Motion"; D.E. 85) Defendants Amazon.Com and Amazon Web Services, Inc. to produce the source code that Plaintiffs say allows JWO Technology to identify and track customers at its JWO-enabled stores using certain physical or biometric characteristics of those customers, and to answer certain related interrogatories. Applying the permissible scope of relevant and proportional discovery under Federal Rule of Civil Procedure 26(b)(1), the Court decides the Motion under the Court's broad discretion to manage discovery under the referral per

*Jones v. City of Elkhart,* 737 F.3d 1107, 1115 (7th Cir. 2013). This order is effective in all three of the related actions (*Van Housen*, *Coulter*, and *Rivera*).

## BACKGROUND

Plaintiffs assert that certain stores operated by the defendants in the three related actions (collectively, "Defendants") use Defendant Amazon's ("Amazon" is used collectively to refer to Defendants Amazon.Com and Amazon Web Services, Inc.) JWO Technology to identify, track, and collect biometric identifiers of customers, including their "hand geometry." Motion at 3. Plaintiffs allege that this practice violates certain BIPA provisions (735 ILCS 14/15(a)-(b)) imposing various requirements associated with the collection of such data, including obtaining the customers' informed consent. *Id.* at 4. Plaintiffs filed the instant Motion after Amazon resisted Plaintiffs' efforts to discover the JWO Technology source code information, which Amazon says is not discoverable under Rule 26(b)(1) relevance and proportionality. Amazon's Opposition to Plaintiffs' Motion to Compel ("Opp."; D.E. 92) at 1-3. Plaintiffs insist that Amazon's document discovery so far suggests JWO Technology does capture customer biometric information, and thus that Plaintiffs need the source code and related information to confirm what they see as a set of facts critical to the lawsuit. Plaintiffs' Reply in Support of Renewed Motion to Compel ("Reply"; D.E. 99) at 1-2. Finally, Amazon also argues that information as business sensitive as source code should not generally be discoverable except as a "last resort" after less intrusive means of discovery have been attempted. Opp. at 1-3.

## ANALYSIS

Defendants call Plaintiffs' motion to compel production of "Amazon's trade-secret source code" an "extraordinary request" (Opp. at 1), but the request is not out of the ordinary in this circuit, where source code is discoverable so long as adequate protection for such trade secret

2

information is in place. Below the Court examines Defendants' proposal that this discovery is too sensitive to allow as anything other than a "last resort." The Court considers the discoverability of the information under the relevance and proportionality standards of Rule 26(b)(1).

I. **Source Code Is Discoverable With Adequate Protective Order Coverage.**

Federal courts recognize a qualified, not absolute, evidentiary privilege for trade secrets and other confidential commercial information, *Fed'l Open Mkt. Comm. of Fed. Res. Sys. v. Merrill*, 443 U.S. 340, 356 (1979). Courts in this circuit have held that trade secret information, and in particular source code, is discoverable upon appropriate findings and with an appropriate protective order, even over a party's objections. *See, e.g.*, *Distefano v. Nordic Consulting Partners, Inc.*, No. 23-CV-657-WMC, 2024 WL 2252407, at *1 (W.D. Wis. May 17, 2024) ("The relevancy and proportionality inquiries of Rule 26(b)(1) apply to source code, just like all other information. And if the standard is met, the court will compel its production."); *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, No. 1:17-CV-01972, 2023 WL 5956992, at *1 (N.D. Ill. Sept. 12, 2023) (ordering production of source code after the exchange of technical documents, over objections of the defendant); *Coast to Coast Claim Servs., Inc. v. Yagelski*, No. 21 C 04641, 2022 WL 16573461, at *2 (N.D. Ill. Oct. 31, 2022) (granting default judgment in part because the defendant failed to provide access to source codes despite a court order to do so); *Trading Techs. Int'l, Inc. v. IBG LLC*, No. 1:10-CV-715, 2019 WL 13087674, at *3 (N.D. Ill. May 17, 2019) (ordering production of source code over party's objection that it was "unduly burdensome"); *CQuest Am., Inc. v. Yahasoft, Inc.*, No. 13-CV-3349, 2015 WL 4576778, at *1 (C.D. Ill. July 30, 2015) (ordering production of source code over the defendant's objections). The Seventh Circuit recently affirmed summary judgment for the defendant because the plaintiff in a trade secrets case had not produced its source code. *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, 163 F.4th 1091 (7th

3

Cir. 2026). "In practical terms, pointing to source codes or algorithms is often the most efficient way to identify a protectable secret." *Id.* at 1098 n.3. *See also Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 555 (7th Cir. 2018) (noting that protective order, allowing defendant to designate discovery materials as confidential, protected defendant's trade secrets in "highly competitive" industry).

The Court thus declines Defendants' invitation to apply *Congoo, LLC v. Revcontent LLC*, No. 16-401 (MAS), 2017 WL 3584205, at *4 (D.N.J. Aug. 10, 2017), to put source code into its own category of discovery which "cannot be adequately safeguarded" by a protective order. *See* Opp. at 3. No other court in this circuit has relied on *Congoo*, and it runs counter to the aforementioned cases in this circuit, including those in which court have noted in dicta that source code has been produced in BIPA cases. *See*, *e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, 713 F. Supp. 3d 470, 499 (N.D. Ill. 2024) (noting that TikTok produced source code to confirm warranty in settlement agreement that TikTok had not collected biometric identifiers or biometric information as defined by BIPA); *Morris v. Nextep Sys., Inc.*, No. 21 CV 2404, 2022 WL 23010576, at *1-2 (N.D. Ill. Dec. 1, 2022) (in BIPA case, denying motion to compel as to RFPs 12 and 13 as moot because defendant had already produced or offered to produce source code for the biometric feature at issue); *Tapia-Rendon v. United Tape & Finishing Co. Inc.*, No. 21 C 3400, 2024 WL 406513, at *4 (N.D. Ill. Feb. 2, 2024) (noting likelihood that BIPA class action would require investigation into source code to determine whether and how biometric information was obtained and electronically stored).

In sum, the foregoing decisions confirm that compelled production of source code, with adequate protection from disclosure under an appropriate protective order, is well within the magistrate judge's broad discretion to manage discovery and is a sound exercise of that discretion.

4

The Court now proceeds to the Rule 26(b)(1) questions of relevance and proportionality of the requested discovery.

II. **The Requested Source Code Is Relevant to Plaintiffs' Claims.**

Plaintiffs contend that:

> To prevail on their claim under § 15(b) of BIPA, Plaintiffs must prove that Amazon collected, captured, or otherwise obtained their biometric identifiers or information through JWO Technology. Because Amazon denies that it collects any biometric identifiers or information, the Source Code and Related Information is more than relevant – it is central for resolving the key dispute in this litigation.

Motion at 11. Defendants call Plaintiffs' argument mere "conjecture," and contend that Plaintiffs' claims turn on "how the technology is designed," "what information JWO Technology uses, for what purpose, and how that information is processed to generate a receipt," which is addressed by the already-produced "architecture and data flow documentation" rather than source code, which "consists of written instructions that implement design decisions already made at the architectural level." Opp. at 3, 8-10. Defendants offer for deposition their "knowledgeable Amazon engineers" to explain the technical documentation showing "JWO's system architecture, design documentation, and data flows," which Defendants already produced. *Id.* at 3, 8-10. In addition, Defendants submit the declaration of one of these knowledgeable Amazon engineers, Tian Lan, as evidence that JWO Technology "is designed to track product interactions within a store using the location of a hand as an anchor" and not to "identify individuals using hand geometry or biometric identifiers as defined by BIPA." *Id.* at 3-4 and 6, citing Ex. 1 ("Lan Decl.") at ¶¶ 4-6, 7–11.

Defendants' arguments against the relevance of the JWO Technology source code are unpersuasive. Defendants do not dispute that the documents Plaintiffs cite from discovery indicate that to identify what customers took which products inside a JWO-enabled store, Amazon's JWO Technology uses, among other things, certain proprietary software related to hand geometry. Opp.

5

at 4-5. Defendants summarily assert that the critical aspects of the JWO Technology's use of that geometry, by the dictionary definition of a certain key word, fall short of what BIPA would consider customer-specific or unique biometric information. Opp. at 2. But Plaintiffs need not rely on Defendants' preferred dictionary definition of a term, and Plaintiffs point out language in Lan's declaration that suggests, to Plaintiffs, that the physical geometric features in question may well include biometric identifiers under BIPA. *See* Reply at 3-4 and n.1, citing Lan Decl. ¶¶ 7-9.

Defendants also assert, without supporting authority, that their preferred interpretation of what is a biometric identifier under BIPA should control whether the source code is relevant discovery. Defendants insist that Lan's descriptions of the JWO Technology do not "identify individuals using biometric identifiers as defined by BIPA." Opp. at 4. But the Court is not persuaded by Defendants' preferred legal conclusion, and on this motion to compel, the Court need not attempt statutory construction of BIPA. Rule 26(b)(1) "gives expansive power to discover information regarding any nonprivileged matter that is relevant to any party's claim or defense. Courts broadly construe relevancy to include any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. If relevance is in doubt, courts should err on the side of permissive discovery." *Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*, No. 21 C 6890, 2025 WL 889480, at *4 (N.D. Ill. Mar. 17, 2025) (internal citations and quotations omitted). The meaning of BIPA has been the subject of much litigation, and at this stage of this litigation, it is enough to understand that "[b]iometric information is defined broadly to include 'any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual.'" *Howe v. Speedway LLC*, No. 1:19-CV-01374, 2024 WL 4346631, at *8 (N.D. Ill. Sept. 29, 2024), quoting 740 ILCS 14/10. Rule 26(b)(1) allows Plaintiffs to obtain discovery relevant to their claims, whether or not the

6

discovery ultimately tends to make those claims more sustainable or not; the Court will not accept Defendants' narrower BIPA gloss to deny Plaintiffs that discovery. Even if the Court were to accept Defendants' claim that "[t]he images and video used by the system are low-resolution," Opp. at 9, the requested discovery would be no less relevant under Rule 26(b)(1), as "BIPA's plain language contains no prerequisite that biometric information be of a particular accuracy … as "[a]ll that matters is that the information be 'based on' a biometric identifier that could be used to identify an individual." *Howe*, 2024 WL 4346631, at *9. *See also Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 872-73 (N.D. Ill. 2022) ("because BIPA does not say one way or the other, how the biometric measurements must be obtained ... to meet the definition of biometric identifier, the items identified as biometric identifiers can be collected in various ways without altering the fact that the measurements still are biometric identifiers"); *Sloan v. Anker Innovations Ltd.*, No. 22 C 7174, 2025 WL 2104559, at *4 (N.D. Ill. July 28, 2025) ("while photographs alone do not support a BIPA action, photographs used by a system that can take a geometric scan of a person do qualify as biometric data;" the issue is that they "plausibly constitute scans of face geometry").

Neither are Plaintiffs required to accept Defendants' or their experts' word that the JWO Technology does not collect biometric data. Defendants insist that the system architecture and design documentation they have already produced show that JWO Technology is not "designed" to capture or collect biometric data. Opp. at 2, 8-9. But what Defendants say about the way JWO Technology was designed, and what the source code actually shows about how the technology was intended to act in practice, may not be the same thing. Defendants themselves explain that "the source code for JWO has undergone substantial changes over time, including significant modifications beginning in or around late 2021." *Id.* at 7, 12. As Plaintiffs point out, "[w]ithout such details contained with the source code, including version history, it is not possible to verify

7

or determine whether the JWO Technology operates as described [in the technical documents] or to assess the precise technical components at issue in this case." Reply at 4-5.

**III.     Discovery of Source Code Is Proportional to the Needs of This Case.**

Next, Defendants argue that "[p]roducing source code for inspection would also impose substantial burdens, including identifying the correct historical versions and dependencies, reconstructing deployment context, and staging materials in a secure review environment – work that would divert engineers from ongoing engineering and operational responsibilities," especially given that "Amazon implemented substantial changes to portions of the JWO system, resulting in materially different iterations of relevant code over time." Opp. at 12. Thus, Defendants argue, Plaintiffs must pursue "less intrusive means" to obtain information on how the JWO Technology operates in practice, in particular, depositions of knowledgeable Amazon engineers. *Id*. at 13.

But these "less intrusive means" may *not* yield the same information for Plaintiffs. Plaintiffs state that both Lan's declaration and the technical documents Defendants have produced "omit details showing exactly how Amazon implemented the hand-tracking components described in its technical documents, what data and features are extracted from hand images, and how such data and features are used to identify and track individual shoppers over a time period." Reply at 1-3. Plaintiffs are entitled to confirm or dispel that information through discovery, and the need for discovery of that information in this case is substantial, making the requested discovery proportional under Rule 26(b)(1). Issues up for consideration in the rule's proportionality analysis include "the importance of the issues at stake in the case," "the parties' relative access to relevant information," and "the importance of the discovery in resolving issues." Fed. R. Civ. P. 26(b)(1). The Court also must consider "whether the burden or expense of the proposed discovery outweighs its likely benefit," *id.*, and here, the Court is unpersuaded that the burdens outweigh the benefits.

8

Assuming that Defendants adequately articulated and substantiated their claimed burdens in producing source code,[1] the Court still finds that this case's needs for the production of the requested source code are substantial enough to render this discovery proportional, for the reasons stated above. In *Trading Technologies*, the court ordered production of source code over the producing party's objection that such production was "unduly burdensome" and would "take an inordinate amount of time" because it involved "collecting and producing every version of around 20 years of source code." 2019 WL 13087674, at *3. The court reasoned that other discovery in the case did not obviate the need for source code production because such other discovery provided "only a single snapshot in time as to how something appears to operate on its face, which may be different to how it operates/operated in prior or later versions." *Id*. The same reasoning applies in this case.

---

[1] Plaintiffs correctly point out that "[n]either Amazon nor Mr. Lan quantify the burden associated with source code production—whether in dollars or employee time." Reply at 7.

CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel Amazon to produce "limited source code" relating to its JWO Technology (D.E. 84) is granted. Source code production is due by March 31, 2026. The parties are directed to give the material appropriate treatment under the protective order (D.E. 73) to protect this highly sensitive information from disclosure. As fact discovery formally closed March 3, 2026 (D.E. 72), but with contemplation of additional fact discovery (D.E. 104), the Court orders the parties to file a joint status report by noon on March 19, 2026, addressing whether the parties continue to request, as they did in their February 24, 2026, status report (D.E. 104), a fact discovery extension (limited to the oral discovery discussed in the status report, and not including further written discovery) to May 1, 2026, and an expert discovery schedule that would close on August 21, 2026. The Court will then enter a further order on discovery scheduling.

**SO ORDERED.**

ENTER:

_____
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: March 11, 2026**