**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OLIVIA VAN HOUSEN, et al., individually and for others similarly situated,<br><br>  Plaintiffs,<br><br>   v.<br><br>AMAZON.COM, INC., d/b/a JUST WALK OUT, and AMAZON WEB SERVICES, INC.,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 23 C 15634<br><br>District Judge LaShonda A. Hunt<br>Magistrate Judge Gabriel A. Fuentes |
| CARLEEN COULTER, individually and for others similarly situated,<br><br>  Plaintiffs,<br><br>   v.<br><br>HUDSON GROUP (HG) RETAIL, LLC, d/b/a HUDSON NONSTOP, and DUFRY AMERICA, LLC,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 23 C 15634<br><br>District Judge LaShonda A. Hunt<br>Magistrate Judge Gabriel A. Fuentes |
| SERGIO RIVERA et al., individually and for others similarly situated,<br><br>  Plaintiffs,<br><br>   v.<br><br>LEVY PREMIUM FOOD SERVICE, LP d/b/a LEVY RESTAURANTS, AMAZON.COM, INC. d/b/a JUST WALK OUT and AMAZON WEB SERVICES, INC.,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 25 C 8242<br><br>District Judge LaShonda A. Hunt<br>Magistrate Judge Gabriel A. Fuentes |

**MEMORANDUM OPINION AND ORDER**

This action is before the magistrate judge under discovery referral and consolidated for discovery purposes with *Rivera v. Levy Premium Food Service LP d/b/a Levy Restaurants, et al.*, No. 23 C 8242 (D.E. 50). Plaintiffs allege that certain stores operated by Defendants utilize Amazon's Just Walk Out ("JWO") Technology to identify and track customers based on their biometric identifiers or information, including their hand geometry, in a manner violating the Illinois Biometric Information Privacy Act ("BIPA"). On February 2, 2026, Plaintiffs filed a motion to compel defendants Amazon.Com and Amazon Web Services, Inc. (collectively, "Amazon") to produce "limited source code relating to Amazon's JWO Technology." ("Initial Motion"; D.E. 85) at 2. On March 11, after briefing by the parties, the Court granted Plaintiffs' motion in a Memorandum Opinion and Order. ("March 11 Opinion"; D.E. 108.) On April 17, the parties filed a joint status report raising a dispute that arose when Amazon disclosed that there are two "branches" of source code repositories for JWO Technology, and Amazon intended to produce the "mainline" branch but not the "development" branch, or branches, of the source code. (D.E. 111.) On April 20, this Court ordered briefing on the matter, and the matter is now fully briefed with Plaintiffs' Motion to Compel Amazon ("Motion"; D.E. 115) to produce the development branch as well as the mainline branch. *See* Amazon's Response in Opposition ("Opp."; D.E. 117); Plaintiffs' Reply in Support of Motion to Compel ("Reply"; D.E. 118). Applying the relevance and proportionality concepts embodied in Federal Rule of Civil Procedure 26(b)(1), the Court decides the Motion under the Court's broad discretion to manage discovery under the referral per *Jones v. City of Elkhart,* 737 F.3d 1107, 1115 (7th Cir. 2013), and Rule 1. This order is effective in the consolidated actions.

**BACKGROUND**

As a general matter, "compelled production of source code, with adequate protection from disclosure under an appropriate protective order, is well within the magistrate judge's broad discretion to manage discovery." *See* March 11 Opinion at 3-4 (analyzing and comparing cases). In the March 11 Opinion, after reviewing the parties' arguments concerning the relevance of "JWO Technology source code," the Court determined that under the broad scope of Rule 26(b)(1) discoverability and as applied in BIPA actions, the JWO Technology source code is relevant to Plaintiffs' claims that Defendants used JWO Technology in their JWO-enabled stores to identify, track, and collect biometric identifiers of customers, and more specifically, "hand geometry." *See id.* at 5-8. In addition, the Court disagreed with Amazon's arguments that source code discovery was proportional to the needs of the case in light of the substantial burdens in production and Plaintiffs' ability to depose knowledgeable Amazon engineers as an alternative. The Court concluded that producing "limited source code" relating to the JWO Technology was proportional to the needs of the case, given Plaintiffs' asserted, substantial need to determine "exactly how Amazon implemented the hand-tracking components described in its technical documents, what data and features are extracted from hand images, and how such data and features are used to identify and track individual shoppers over a time period." *Id.* at 8, quoting Plaintiffs' reply brief ("Initial Reply"; D.E. 100) at 1-3.

Despite only discussing "JWO Technology source code" broadly in briefing the Initial Motion, after the March 11 Opinion issued, Amazon explained that there are eight JWO software "Components," each of which contains one mainline branch and "one or more separate" development branches, totaling "approximately 160 distinct development branches [that] is roughly three times the volume of the mainline code." Opp. at 4-5. Amazon defines the mainline

3

branch as "the authoritative version of the code that has been deployed to JWO-enabled stores – together with its full commit history, capturing every change ever merged into the deployed code, in chronological order." *Id*. at 4. By contrast, Amazon states that "[b]y design, code that resides in a development branch has not been merged into the mainline branch, has not gone through Amazon's build, packaging, or deployment processes, and cannot be executed in a JWO-enabled store," and not all development branch work is intended for deployment. *Id*. at 4-5, citing Declaration of Tian Lan ("Lan Decl.") ¶¶ 5-9, 28. As such, "the development branches do not capture, collect, or otherwise obtain biometrics from any customer of a JWO store," and "nor has any development-branch code been trained, validated, or tested using biometric information." *Id*., citing Lan Decl. ¶ 21. Although Plaintiffs requested "limited source code" discovery in their Initial Motion, upon learning of the different branches within the JWO source code, "Plaintiffs' position [now] is that Amazon should produce all source code related to the components." Reply at 4 n.2.

## I.      The Development Branch(es) of the JWO Technology Source Code Are Relevant under Rule 26(b)(1).

Plaintiffs argue that discovery of Amazon's development branch code is relevant to their claims that Defendants violated BIPA by collecting and retaining biometric data of persons entering JWO-enabled stores because even if the development branch was not actually used in stores, it "informs how the mainline code (and thus JWO Technology) operates" in stores, by: "reveal[ing] Amazon's design choices and technical capabilities relating to biometric data collection;" showing "how" and "when" biometric collection was created, tested, merged, modified, disabled, or introduced into the mainline code; and whether this biometric collection was done "in ways not evident in the mainline code." Reply at 1-5.

Amazon responds that non-mainline branch material of the JWO Technology source code "does not, and cannot, bear on the conduct BIPA regulates as a matter of law" because BIPA "is

4

concerned with what an entity does with real people, not with work that precedes the deployment of any system. Internal development work that did not touch a real customer in a real store cannot, as a matter of relevance under Rule 26(b)(1), bear on whether the deployed JWO Technology violates BIPA." Opp. at 1, 8. In addition, Amazon contends that production of the development branches are not relevant and exceed the scope of the discovery this Court ordered in the March 11 Opinion because they do not show "exactly how Amazon implemented the hand-tracking components," "what data and features are extracted from hand images," and "how such data and features are used to identify and track individual shoppers over a time period." *Id*. at 7, quoting the March 11 Opinion and the Initial Reply.

> Under Rule 26(b)(1),
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevance for purposes of discovery is a low bar to meet. Because the purpose of discovery is to help define and clarify the issues, relevance is to be construed broadly." *In re Forkner*, No. 25 C 8015, 2025 WL 3042377, at *2 (N.D. Ill. Oct. 31, 2025) (internal citations and quotations omitted).

Under the broad definition of relevance, all of the JWO Technology source code, including branches outside the mainline branch, is relevant to Plaintiffs' claims. Amazon's claim that non-mainline branch material of the JWO Technology source code, "*as a matter of law … cannot, as a matter of relevance under Rule 26(b)(1), bear on whether the deployed JWO Technology violates BIPA*," Opp. at 1, 8, misunderstands the meaning of relevance under Rule 26(b)(1). Although the

5

development branch source code material may not bear *directly* on Plaintiffs' efforts to prove a violation of BIPA because the development branch material was never deployed in JWO-enabled stores, the Court accepts Plaintiffs' argument that all branches of the JWO Technology source code could be broadly relevant under Rule 26(b)(1) by "inform[ing]" how the mainline code of the JWO Technology operates in stores, and by helping define and clarify the issues of the case.

**II.    Producing the Development Branches of the JWO Technology Source Code Is Not Proportional under Rule 26(b)(1).**

But relevance is only the first part of the Court's analysis under Rule 26(b)(1). The Court must also consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As neither party contends that the importance of the issues or the amount in controversy weighs more heavily one way or the other in this analysis, and the Court agrees, the Court proceeds to the other factors to consider.

Plaintiffs contend that Amazon is "attempt[ing] to exploit the parties' information asymmetry" by "again ask[ing] Plaintiffs and the Court to accept their say-so about what the code does and does not show." Reply at 5-6. Plaintiffs argue that the same principle applies as in the March 11 Opinion, when the Court stated that Plaintiffs were not "required to accept Defendants' or their experts' word that the JWO Technology does not collect biometric data," and that Plaintiffs were entitled to verify "what the source code actually shows about how the technology was intended to act in practice," and "whether the JWO Technology operates as described" in Amazon's technical documents, by assessing for themselves "details contained with the source code, including version history." *Id.* at 3-4, citing March 11 Opinion at 7-9. But the difference now is that Amazon *will* produce the portion of the source code – the mainline branch – that applies to

6

the JWO Technology that has been actually deployed in stores, *i.e.*, the only portion of the code that could potentially have violated BIPA as Plaintiffs claim, including "its full commit history, capturing every change ever merged into the deployed code, in chronological order." Opp. at 4-5.

Because of this difference in the analysis between Plaintiffs' Initial Motion for compelled production of the JWO Technology source code and the instant Motion for compelled production of the development branches of the source code, indeed "all source code related to the components," Reply at 4, n.2, the critical questions in the Court's determination of whether the requested discovery is proportional to the needs of the case are "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Plaintiffs contend that its review of the development branches is "necessary" to: "verify changes and understand system evolution," to "allow Plaintiffs to verify Amazon's representations about how the relevant components function" when they are actually deployed in JWO-enabled stores, and to provide "critical context ... to understand the mainline code." (Reply at 3, 9.)

Notwithstanding the broad relevance of that information, the Court disagrees that *the needs of the case* require Plaintiffs to have access to *all* the JWO Technology source code, as opposed to the limited source code they originally sought and this Court allowed. Plaintiffs argue that "information in the development branch cannot always be derived from the mainline branch, and both must be considered together for a complete picture of how the relevant components evolved." Reply at 3, citing Motion, Ex. A, Declaration of Atif Hashmi ("Hashmi Decl.") ¶ 6. But assuming the truth of that assertion, the Court does not see the needs of the case as requiring Plaintiffs to have a "complete picture" of the evolution of development branch source code that was never deployed, against the backdrop of Plaintiffs' lawsuit alleging that Defendants violated BIPA by

7

*actually* identifying, tracking, and collect biometric identifiers of customers in their JWO-enabled stores. The development branch source code stands in contrast to earlier versions of the mainline branch code, which Amazon has stated it will produce. Amazon asserts that the mainline branch of the source code together with its commit history can show every aspect of how the JWO Technology was ever actually deployed in Defendants' stores.

The Court also does not credit Plaintiffs' argument that Amazon's claim that "the mainline source code 'reflects the code that was actually implemented in the JWO Stores,' and that the development branch 'contains experimental code, abandoned prototypes, and features that may never have been completed, let alone deployed,'" are "unverifiable" without Plaintiffs' independent review of the development branch code. Motion at 5-6, quoting the April 17, 2026 status report (D.E. 111) ¶ 15. Plaintiff does not need to see the entire development branch source code to verify the answer to each of these questions and the completeness of Amazon's mainline branch source code production because Plaintiffs will already have access to all of the code related to JWO Technology that was actually deployed and the earlier versions of the deployed software. Additional discovery designed to verify the completeness of Amazon's representations regarding its mainline branch source code production will be limited to depositions, interrogatories, and/or requests to admit.

Furthermore, contrary to Plaintiffs' argument, the Court cannot ignore that there is indeed "additional burden on Amazon to produce the development branch," even if the development branch code resides within the same repository as the mainline branch. Motion at 9. Amazon explains:

> The development branches at issue span approximately 160 distinct branches across 16 separate package repositories supporting the eight Components, totaling approximately 7.5 GB of source code—roughly three times the 2.4 GB volume of the corresponding mainline code... [T]he work would require approximately 160

engineer-hours, distributed across the engineers familiar with each of the 16 package repositories.

Opp. at 12- 13, citing Declaration of Tian Lan ("Lan Decl.") ¶¶ 23-27. Whether or not Amazon will be able to lessen this burden in practice, *see* Reply at 7, production of the development branch source code will increase substantially the burden and expense on Amazon, and in light of the source code Amazon will produce, the Court finds that "the burden or expense of the proposed discovery outweighs its likely benefit" to Plaintiffs. Fed. R. Civ. P. 26(b)(1).

Plaintiffs further speculate that while Amazon claims the development code has never been trained, validated, or tested using the biometrics of any customer at a JWO-enabled store, the development code may have "analyzed or processed data derived from other individuals." Reply at 4-5 and n.3. The Court sees that assertion as too speculative, and significantly beyond the core claims asserted in the complaint, for the Court to allow Plaintiffs to impose on Amazon the additional burden of producing discovery as to whether the development branch code data included biometrics. *See Emerson v. Dart*, 109 F.4th 936, 943 (7th Cir. 2024).

## III. Producing "Training Code" Is Proportional to the Needs of the Case.

Nevertheless, Plaintiffs argue that they need additional source code discovery if "the mainline code alone [does] not reveal information about the training processes and inputs behind the deployed models." Reply at 4. That argument is well-taken, although Amazon states that "the source code used to train the deployed JWO machine learning models does not reside in the sought-for development branches." Opp. at 2, citing Lan Decl. ¶ 16. Amazon indicates that the "training code" is a third type of JWO Technology that does not reside in the mainline branch either, as Amazon states that it "is open to meet and confer about the appropriate scope and conditions of such production" of the training code. *Id*. at 2 n.1. Regardless, Amazon states that in addition to the mainline branch code, it "will [] produce the trained machine learning model artifacts that are

9

deployed and applied in JWO-enabled stores," as opposed to the "training code," which "produced" the trained model artifact. *Id*. at 4, 11.

The Court expects that Amazon's disclosure of this third type of JWO Technology source code (the "training code") in the midst of briefing on Amazon's revelation (*after* this Court ordered Amazon to produce "limited source code relating to Amazon's JWO Technology") that there are two types of JWO Technology source code (the mainline source code and the development branch code, the latter of which Amazon resists producing) covers the entirety of the JWO Technology source code. In the meantime, to avoid further delay, s*ee* Fed. R. Civ. P. 1 and *Jones*, 737 F.3d at 1115, the Court orders Amazon to produce the training code that produced the trained machine-learning model artifacts that are deployed in JWO-enabled stores, based on the relevance and proportionality of the training code in view of its specific application to the JWO Technology that was deployed in JWO-enabled stores.

## CONCLUSION

For the foregoing reasons, the instant Motion (D.E. 115) is granted in part and denied in part. Plaintiffs' request for compelled production of the development branches of the source code is denied, but their request for compelled production of the training code that produced the trained machine-learning model artifacts that are deployed and applied in JWO-enabled stores is granted. **SO ORDERED.**

ENTER:

GABRIEL A. FUENTES
United States Magistrate Judge

DATED: May 18, 2026

10